

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FTB:PP/SKW
F. #2021R00019

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 26, 2024

By ECF

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Quandelle Joseph
               Criminal Docket No. 23-306 (DLI)

Dear Judge Irizarry:

      The government writes in response to the objections the defendant makes to the Presentence Investigation Report ("PSR") in his July 17, 2024, sentencing memorandum and his July 26, 2024, letter.

I.      The Defendant's Offense Conduct

      The defendant claims that, although he accepted bribes from Inmate-3, he did not accept bribes from Inmate-1. (Def.'s Mem. at 9-12.) Instead, according to the defendant, he did not provide any contraband in the bedroll he brought Inmate-1 on December 5, 2020. In support of his argument, the defendant claims that the government's position in United States v. Jeremy Monk, 22-CR-442 (FB) demonstrates that it was Correction Officer Monk, and not the defendant, who provided contraband to Inmate-1 on December 5, 2020.

      The evidence shows that both Monk and the defendant accepted bribes from Inmate-1. As stated in the PSR and the government's sentencing submission, the defendant brought a bedroll to Inmate-1 on December 5, 2020, when the Metropolitan Detention Center ("MDC") was in lockdown. Within hours of the defendant providing that bedroll, MDC staff smelled marijuana emanating from Inmate-1's cell and found a contraband cell phone in his cell. An associate of Inmate-1 attempted to send multiple Cash App payments to Monk but those payments were rejected by Cash App. The next month, in January 2021, the defendant sent a text message to Inmate-1's associate from his burner cell phone that Inmate-1 owed

the defendant "12 bands," meaning $12,000.  The associate of Inmate-1 never met the defendant to pay the $12,000.

According to the defendant, although he did not smuggle contraband in December 2020, he agreed to smuggle contraband in January 2021 to Inmate-1 as a "favor" for CO Monk and contacted Inmate-1's associate asking for $12,000, but the payment never occurred and the contraband was never delivered.  (Def.'s Mem. at 11.)  But, even accepting the defendant's assertion as true, the defendant entered a conspiracy with CO Monk, Inmate-1, and the associate of Inmate-1 to smuggle contraband to Inmate-1 in exchange for $12,000, even if the transaction never occurred.  Thus, even accepting the defendant's assertions as true, the defendant's attempt to minimize his criminal conduct with Inmate-1 should be rejected.

Accordingly, the PSR correctly describes the defendant's offense conduct.

## II. The Guidelines Calculation

The defendant argues that the four-point enhancement under § 2C1.1(b)(3) for being a public official in a sensitive position should not apply.  (Def.'s Mem. at 4-6.) Application Note 4 defines a "sensitive position" as "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process" and lists as examples of public officials who hold a sensitive position "a juror, a law enforcement officer, an election officer, and any other similarly situation individual."

Although the Second Circuit does not appear to have addressed whether § 2C1.1(b)(3) applies to correction officers, the Third, Fourth, Fifth, Sixth and Seventh Circuits have found that correction officers at county correctional facilities and federal facilities hold "sensitive positions."  See United States v. Zamora, 982 F.3d 1080, 1085-86 (7th Cir. 2020) ("Prison guards are situated similarly to law enforcement officers for purposes of § 2C1.1(b)(3) as explained in Application Note 4(B).  The men and women who occupy these positions wield the coercive power of the state to maintain order and safety among the populations they protect.  They are responsible for enforcing the rules.") (citation omitted); United States v. Griffith, 781 F. App'x 418, 421 (6th Cir. 2019); United States v. Grosso, 658 F. App'x 43, 46-47 (3d Cir. 2016); United States v. Dodd, 770 F.3d 306, 312 (4th Cir. 2014); United States v. Castillo Chairez, 423 F. App'x 361, 362 (5th Cir. 2011); United States v. Guzman, 383 F. App'x 493, 494-95 (5th Cir. 2010); but see United States v. Henderson, 465 F. Supp. 3d 778, 780 (N.D. Ohio 2020) (declining to apply enhancement for state correction officer).  Because the conduct in this case involved the bribing of a correction officer who had decision-making authority like other law enforcement officers, the government submits that the PSR correctly included the enhancement under § 2C1.1(b)(3). Recently, in United States v. Patterson, 22-CR-196 (CBA), Judge Amon held that a New York City correction officer working on Rikers Island was a public official in a sensitive position and applied the four-point enhancement.

2

Accordingly, the PSR correctly includes this enhancement.

III.  Conclusion

For the foregoing reasons, the government respectfully requests that the Court adopt the PSR as filed by the Probation Department.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Philip Pilmar
Philip Pilmar
Sara Winik
Assistant U.S. Attorney
718-254-6106/6058

cc:   Clerk of the Court (FB) (by ECF)
Robert LaRusso, Esq. (by ECF)
Ashtin Audin, United States Probation Officer (by E-mail)